# IN THE DISTRICT COURT FOR THE UNITED STATES OF AMERICA
## WESTERN DISTRICT OF MICHIGAN
### *Southern Division*

**JANE DOE NO. 1**, an individual

        Plaintiff,

CASE NO. 25-CV-          -
**HON.**

v.

**CLINTON COUNTY, MICHIGAN**, a state of Michigan municipality
**SHERIFF SEAN DUSH,** individually and as employee/agent Clinton County
**CLINTON COUNTY SHERIFF'S OFFICE,**
**DEPUTY ALEXIS CHAPKO,** individually and as employee/agent Clinton County
**SERGEANT RICHARD STOUT,** individually and as employee/agent Clinton County
**DAWN THELEN, L.P.N.**, individually and as employee/agent Clinton County
**JOHN DOES**, to be named individually and as employees/agents Clinton County
**ADVANCED CORRECTIONAL HEALTHCARE, INC.,** an Illinois corporation

        Defendants

_____/

## PERRONE LAW PLLC
***Jacob A. Perrone (P71915)***
Attorneys for Plaintiff
3310 Kresge Ln.
East Lansing, MI 48823
Phone: (517) 719-4657
jacob.perrone@yahoo.com

_____/

## PLAINTIFF JANE DOE NO. 1 COMPLAINT FOR DAMAGES PURSUANT TO 42 USC §1983

_____/

/s/ *JP*

*There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.*

**NOW COMES** Plaintiff (hereinafter referred to as "*Jane Doe No. 1*" or "*Plaintiff*"), by and through her attorneys, **PERRONE LAW PLLC,** and for her Complaint states as follows:

## COMMON ALLEGATIONS

1. This action arises under 42 USC § 1983. Jurisdiction is conferred by 28 USC §1331, §1343(a)(3), and (4).

2. *Jane Doe No. 1* is a resident of the County of Clinton, State of Michigan, in the Western District of Michigan.

3. Defendant Clinton County was at all pertinent times a political sub-unit of the State of Michigan, in the Western District of Michigan. (hereinafter referred to as "*Clinton County*") *Clinton County* was at all pertinent times legally obligated to enact policies, procedures, protocols, and customs, both written and unwritten, for its law enforcement officers to strictly follow, that conform with the laws of the state of Michigan and the laws of the United States, including the United States Constitution and is the body responsible for the control and oversight of its departments, agencies and facilities.

4. *Clinton County* is responsible for the operation and staffing of the *Clinton County Sheriff's Office* (the "*CCSO*") and the *Clinton County Jail*, ("*CCJ*") with said operating and staffing including the organization, training, operation and discipline of staff correctional officers and medical and mental health personnel at that facility.

5. At all times relevant, Defendant, *Advanced Correctional Healthcare, Inc.* (hereinafter "*ACH*"), was and is an Illinois corporation, doing business in *Clinton County*, and contracted with *Clinton County* to provide medical services to *CCJ* inmates and is responsible for the control and oversight of the operation and staffing of medical personnel and facilities at *CCJ*, including the organization, hiring, training, operation, supervision, retention

and discipline of medical staff personnel at *CCJ* and the medical training of *Clinton County* correctional employees.

6. *Sheriff Sean Dush* is a resident of Clinton County Michigan, in the Western District of Michigan, and at all material times was employed by *CCSO* as Sheriff. ("*Sheriff Dush*") He was a policy maker for the *CCJ* and represented the ultimate repository of law enforcement power in the *CCJ*. *Sheriff Dush* was responsible for the supervision and oversight of *CCJ* employees including but not limited to deputies and *CCJ* medical personnel including those contracted through *ACH*. As Clinton County Sheriff, *Sheriff Dush* exercised administrative, command, fiscal and policy making authority over the *CCSO and the CCJ*, and at all times herein was acting under color of state law. *Sheriff Dush* was acting within the scope of his employment and under the color of State law and is being sued in his official capacity as a policy maker and Sheriff of *Clinton County*.

7. As the *Clinton County* Sheriff, *Sheriff Dush*, was employed by statute to protect the lives and property of *Clinton County* citizens by enforcing State laws and local ordinances, investigating crimes, and detaining inmates remanded to the *CCJ* in a manner which maintains the highest degree of professional excellence, integrity, and courtesy. His duties also included performing law enforcement, jail and support missions in a humane manner which reflects sensitivity to the dignity and equal rights of all citizens and reinforces the values of the community. These duties further included addressing misconduct and discipline of the sergeants, officers, and medical staff working within the *CCJ*.

8. At all times relevant, Defendant, *Sergeant Richard Stout* (hereinafter "*Sergeant Stout*"), upon information and belief, resided in the County of Clinton, State of Michigan, and

was and is employed by the *CCSO* and as a Sergeant was responsible for supervising officers and jail medical staff, including the *John Does*. *Sergeant Stout* was acting within the scope of his employment and under the color of state law and is being sued in his individual and official capacity.

9. *Deputy Alexis Chapko ("Deputy Chapko")* is a resident of *Clinton County* Michigan, in the Western District of Michigan, and at all material times was employed by *CCSO* as a deputy corrections officer at *CCJ*. *Deputy Chapko* was acting within the scope of his employment and under the color of state law and is being sued in his individual and official capacity.

10. *Sergeant Stout, Deputy Chapko*, and Defendant *John Does* were acting within in their capacities as law enforcement officers, employed by *CCSO and CCJ* as such, acting under color of state law as trained by *Clinton County*, acting in the course and scope of their duties as law enforcement officers, and they are being sued both in their individual and official capacities. Inadequate information has been provided to date upon which to identify Defendants *John Does* by name, and this Complaint will be as amended as necessary when these defendants have been identified. Upon information and belief, each of these defendants resides within the Western District of Michigan.

11. *Dawn Thelen, L.P.N.* ("*Nurse Thelen*") was at all material times was employed by *CCJ* as jail medical personnel, and upon information and belief, is a resident of the State of Michigan, County of Clinton, and was and is a licensed practicing nurse employed by *Clinton County, CCSO, CCJ, and/or ACH*, and was acting under the color of state law and in the course and scope of her employment with *Clinton County, CCSO, CCJ, and/or ACH*, and is being sued in her individual capacity.

4

12. At all times relevant, each named individuals were employees/agents of *Clinton County, CCSO,* and/or the *CCJ*, engaging in the exercise of a governmental function and conduct within the course, scope and authority of his/her/their employment/agency with *Clinton County, CCSO,* and/or the *CCJ*.

13. *Sheriff Dush*, *Sergeant Stout*, *Deputy Chapko*, *Nurse Thelen, John Does*, and any other yet to be named *CCJ* medical personnel, both individually and in their capacity as an agent of *Clinton County*, *CCSO*, *CCJ* and/or *ACH.* (hereinafter referred to as *"CCJ Staff"* unless identified specifically individually otherwise*)*

14. When the events alleged in this complaint occurred, *CCJ Staff* were acting within the scope of their employment and under color of law. At all material times, *CCSO* and/or *CCJ* employed *CCJ Staff* and is liable for their acts. The *CCJ* is also liable because of its policies, practices, and customs, which led to this complaint of violation.

15. Defendants are all being sued in their individual and official capacities. Defendant *Clinton County* is being sued under a *Monell* theory of liability for enacting policies, whether written or unwritten, that demonstrated deliberate indifference of suspects in its custody, such as *Jane Doe No. 1*. Such deliberate indifference is directly responsible for *Jane Doe No. 1's* significant and continuing debilitating physical and mental injuries.

16. This Court has jurisdiction over the claims set forth herein that arise out of federal law pursuant to 28 U.S.C. §§ 1331 & 1343 and has supplemental jurisdiction over the claims set forth herein that arise out of state law pursuant to 28 U.S.C. § 1367.

17. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as the claims

arise out of occurrences that took place within the Western District of Michigan, in the City of St. Johns, Clinton County, Michigan.

## **FACTUAL BACKGROUND**

18.     On June 7, 2023, at or about 8:30 a.m. at the *65A Judicial District Court for the County of Clinton*, State of Michigan, *Jane Doe No. 1* was wrongfully sentenced to thirty (30) days jail and transported to the *CCJ*. *Jane Doe No. 1* was at *CCJ* from the morning of June 7, 2023, until she had a *Xanax* withdrawal induced seizure on June 10, 2023, when she was taken on an emergent basis to *University of Michigan Sparrow-Clinton Hospital,* ("*Sparrow*") Although it is a prescribed medication *CCJ* wouldn't allow her to take it because it is a controlled substance.

19.     *Jane Doe No. 1*'s seizure was directly attributable to *CCJ Staff's* deliberate indifference to her health, safety, and specific medical needs by preventing her from getting the medical care that she clearly needed resulting in a more severe seizure and recurrent seizures. *Xanex* is known to require monitoring for withdrawal symptoms and effectively providing some form of medication to counteract the loss of the anti-anxiety effects of *Xanex*, because it is well known for its withdrawal symptoms that can cause amongst other things seizures.

20.     *Jane Doe No. 1* went to *Sparrow* after approximately 3 days in *CCJ* because she couldn't eat and exhibited clear and obvious symptoms of *Xanex* withdrawal since she was processed into *CCJ*. She disclosed her prescribed use of *Xanax* in a medical screening when she processed into *CCJ* on June 7, 2023, and no referral was made for her to see a physician. *Jane Doe No. 1* and her father repeatedly informed *CCJ Staff* of her previous prescribed *Xanax* use and her likelihood for withdrawal.

21. *Jane Doe No. 1* repeatedly begged for help for 3 days after arriving at *CCJ* because something was horribly wrong, and she begged to get medical attention. She was consistently told that "*she would be ok*". She began exhibiting signs of *Xanax* withdrawal almost immediately after arriving at the *CCJ* and vomited multiple times prior to her seizure. *Jane Doe No. 1* was intentionally, deliberately, and systematically disregarded by *CCJ Staff* who knew or should have known that preventative measures were necessary because of the likelihood of seizure resulting from *Xanax* Withdrawal.

22. *CCJ Staff,* including but not limited to, specifically *Nurse Thelen*, *Sergeant Stout*, *Deputy Chapko,* and by extension *Sherrif Dush* appear to work on an antiquated custom that disregards *CCJ* inmates basic human needs and rights and their deliberate indifference to inmates health and wellness will be supported by the surveillance videos. They will show someone begging for their life and their requests for help or assistance being mocked. When she finally got to talk to *Nurse Thelen* she was summarily disregarded, shooed away, and *Nurse Thelen* told her "she would have to wait days until the following Wednesday to talk to a doctor."

23. *Jane Doe No. 1* requested help from other *CCJ Staff* 4 to 5 times a day including repeated reports to *Sergeant Stout* and *Deputy Chapko* to address her *Xanex* withdrawal and medical needs. Her father called *CCJ* repeatedly and talked to *CCJ Staff* multiple times requesting she be allowed to use her medications or provided with some other form of treatment to alleviate the side effects of the *Xanex* withdrawal. He was told that if he kept calling then "*she would be put in a holding cell.*" *CCJ Staff*, specifically *Sergeant Stout*, *Deputy Chapko*, and *Nurse Thelen* all were deliberately indifferent to and their actions fell well below the standard of care required of corrections deputies in a situation where they are in charge of someone who is in custody.

24.     On the morning of June 10, 2025, *Jane Doe No. 1* had a *Zofran* anti-nausea medication dropped off to counteract the *Xanex* withdrawals. She went to the medical unit and was sat down on a bench to take the *Zofran*. She had a seizure while sitting on the bench from the deprivation of not only medical attention but deprivation of her basic needs and her rights. This was her 1st lifetime seizure and she has had seizures since precipitated by the 1st.

25.     *Jane Doe No. 1's* seizure was caused by *Xanax* withdrawal that could have easily been prevented if *CCJ Staff* responded at all to her obvious, communicated, and imminent needs. *CCJ Staff* told the paramedics that *Jane Doe No. 1* had a panic attack and that was why she was in medical, but video evidence will show she went to the medical unit voluntarily to take *Zofran*. *CCJ Staff* lied to paramedics to cover up their deliberate indifference to *Jane Doe No. 1's* health and well-being.

26.     *Jane Doe No. 1's* quality of life declined because of the physical injuries she suffered at *CCJ*, including but not limited to the seizure and head contusion and the attendant mental and emotional health issues she has also suffered as a result. The stigma she carries with her interferes with her general ability to enjoy a normal life.

27.     *CCJ Staff* were acting in a manner consistent with a general policy at *CCJ* that inmates don't deserve basic human and medical necessities and should suffer while incarcerated regardless of particularized need. *Jane Doe No. 1* was deprived of her right to medical treatment because of the strict customs, policies, and procedures employed by *CCJ* that do not account for inmates with certain health classifications. *CCJ Staff's* deliberate indifference to the needs of *Jane Doe No. 1* and *CCJ* inmates historically is irrefutable as more adequately pled below.

28. If a *CCJ* inmate has a novel or pre-existing medical condition *CCJ Staff* will intentionally and systematically deny inmates' basic right to medical care. *Nurse Thelen* has been known by *CCJ* inmates as a controlling and abusive authoritarian who fails to provide basic assistance, blames others for her indifference, and encourages other *CCJ Staff* to act in a similar manner. *CCJ*'s deliberate indifference is well documented with complaints and lawsuits against *Clinton County*. *CCJ* 's pride in being a "tough" jail has led to multiple instances were *CCJ Staff* has shown willful deliberate indifference to *CCJ* inmates basic human rights and dignities.

29. When *Jane Doe No. 1* returned to *CCJ* from *Sparrow*, *CCJ Staff* would not allow her to take medication prescribed by *Sparrow* doctors, adding further insult to injury and supporting *her* contention that *CCJ* was deliberately indifference to her medical condition.

30. *Xanax* withdrawal standard of care was established because it is a common and well-known occurrence that is known to cause seizures. *CCJ* did not have any policies or procedures regarding how to deal with an inmate faced with *Xanax* withdrawal, or their policies were customarily and systematically disregarded. *CCJ Staff*'s inaction in the face of a known danger equates to a deliberate indifference to *Jane Doe No. 1's* mental and physical health and well-being.

## COUNT I
### 4th, 5th, and 14th Amendment Violations

31. *Jane Doe No. 1* incorporates by reference prior paragraphs.

32. *Jane Doe No. 1's* constitutionally protected rights that *CCJ* violated include the following:

   a) the right to liberty protected in the substantive component of the Due Process Clause of the Fifth and Fourteenth Amendments, which includes personal safety, freedom from captivity, and a right to medical care and protection.

    b) the right to fair and equal treatment guaranteed and protected by the Equal Protection Clause of the Fourteenth Amendment

33. *CCJ and CCJ Staff*, acting under color of state law, took *Jane Doe No. 1* into physical custody, not allowing *Jane Doe No. 1's* transfer by medical personnel to the hospital, as was requested by *Jane Doe No. 1* and her father also repeatedly requested that she be provided with some type of treatment or care to offset the *Xanax* withdrawal symptoms. *CCJ's* established a special custodial relationship with *Jane Doe No. 1* by taking her into custody, giving rise to affirmative duties on their part to secure for *Jane Doe No. 1* the constitutionally protected rights identified above.

34. *CCJ's* violation of their affirmative duties, their intervention in preventing *Jane Doe No. 1's* transfer to the hospital, and the delay caused by *CCJ Staff's* deliberate indifference to *Jane Doe No. 1* prevented others from providing her constitutionally protected rights when she was unable to do so. This situation, while *Jane Doe No. 1* was under *CCJ and CCJ Staff's* custodial control, is a direct and proximate cause of the subsequent deprivation of her constitutional rights described above.

35. *CCJ Staff,* acting under color of state law, and in concert with one another, by their conduct, showed intentional, outrageous, and reckless disregard for *Jane Doe No. 1's* constitutional rights. Further, their actions in detaining *Jane Doe No. 1*, given her medical condition, showed deliberate indifference to her serious medical needs and was a deprivation of *Jane Doe No. 1's* constitutionally protected rights.

36. *CCJ's* detention of *Jane Doe No. 1* was done with knowing disregard of an excessive risk to her health or well-being. While *Jane Doe No. 1* was incarcerated, *CCJ Staff*

had subjective, objective, and/or actual knowledge of *Jane Doe No. 1's* deteriorating health condition and continuously showed substantial disregard to this condition as described above.

37. The surveillance videos of *Jane Doe No. 1's* time at *CCJ* should be preserved due to this incident being an "*event response*". Multiple inmates witnessed *CCJ Staff* willfully acting deliberately indifferent towards her medical needs despite her communicating her need for help and her exhibiting medically objective signs of the need for medical intention including but not limited to, looking pale, looking extremely fatigued, and sweating.

38. *CCJ Staff* also had video monitors from which they observed *Jane Doe No. 1's* objective signs of health crisis. *CCJ Staff* had subjective, objective, and/or actual knowledge, that *Jane Doe No. 1* was vomiting and was suffering from other symptoms related to *Xanax* withdrawal.

39. Despite *CCJ Staff's* subjective, objective, and/or actual knowledge of *Jane Doe No. 1's* serious medical needs, having time to consider the consequences of their actions, and as days and hours passed while she continued to needlessly suffer, *CCJ Staff,* particularly *Sergeant Stout* and *Nurse Thelen* deliberately ignored and were indifferent to *Jane Doe No. 1's* emergent signs and symptoms of *Xanax* withdrawal that were apparent.

40. Based upon *CCJ Staff's* observations and knowledge of *Jane Doe No. 1's* condition, her communications of her pain and suffering, and inmates' communications of the same, *CCJ staff* repeatedly made the intentional and measured decision to prevent her from receiving necessary medical attention, including either calling for emergency transport to an acute care facility and/or hospital.

41. Despite *CCJ* and *ACH* policies and procedures, *CCJ Staff* tolerated policies exhibiting a complete disregard and deliberate indifference of inmates' health and/or sanitary and/or safety needs as illustrated by the facts as fully set forth above as well as the following:

   a) Upon information and belief, prior to *Jane Doe No. 1's* incarceration, another inmate had overdosed on fentanyl while in the care and custody of *Defendants*.

   b) Upon information and belief, subsequent to *Jane Doe No. 1's* incarceration *Jane Doe No. 2* was an inmate at *CCJ* and had to be rushed to the hospital from court after the Judge saw here deteriorating physical condition due to the jails deliberate indifference to her and her heart condition requiring a defibrillator that thankfully brought her back from flat line at *Sparrow*.

   c) Upon information and belief, despite multiple requests for help from *Defendants*, an inmate with MRSA did not receive medical attention until the infection on his face developed pus.

   d) Upon information and belief, another inmate with a genital infection was not seen until the area had become swollen and exhibited signs of pus.

   e) Upon information and belief, inmates, including *Jane Doe No. 1*, were refused the contracted for medical attention and care that *CCJ* was obligated to provide until inmates' medical conditions became so severe that *CCJ* was forced to send them to the hospital.

   f) Upon information and belief, inmates were often not given toilet paper and told to "fight for it." If they were not given toilet paper or could not acquire it, they were left to have a bowel movement and then take a shower to clean themselves.

   g) Upon information and belief, inmates were often not given mattresses upon arrival at *CCJ* and were also told to "*fight for it*."

   h) Upon information and belief, upon arrival at *CCJ*, some inmates did not receive any medical screening and/or it was woefully limited.

   i) Upon information and belief, when inmates were detoxing at *CCJ*, they would not receive medical attention for days despite requesting assistance.

   j) Upon information and belief, inmates were administering medications to other inmates, including but not limited to, insulin, administering blood sugar tests, and administering other medications.

k) While incarcerated at *CCJ*, a diabetic inmate had low blood sugar, communicated this with *CCJ* and was ignored. Finally, the inmate received glucose tablets, however, *CCJ* would not give her the correct dose, causing her blood sugar fall to alarming levels by the time she was released; and.

l) Against the policies and procedures of *CCJ*, video surveillance shows deputies dragging an inmate into a cell and covering up all the windows with a velcro padding so that it was impossible to see and/or observe the inmate inside of the cell.

42. *CCJ Staff* showed complete disregard for *Jane Doe No. 1's* disclosed medical condition. Further, evidence will show that the *CCJ* and/or *ACH* adopted a policy of carelessness and dehumanization regarding its inmates.

43. As a direct and proximate result of *CCJ and CCJ Staff's* conduct, *Jane Doe No. 1* suffered physical and emotional injury, loss of freedom, and other constitutionally protected rights described above.

44. *Clinton County, Sheriff Dush, CCSO, and CCJ*, *ACH* and/or *CCJ Staff* acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of deliberate indifference to individuals such as *Jane Doe No. 1*. As a direct and proximate result of these policies, practices, and customs, she was deprived of her constitutionally protected rights described above.

**WHEREFORE,** Plaintiff, *Jane Doe No. 1***,** requests that this court enter judgment against Defendants jointly and severely, in an amount consistent with the damage sustained.

## COUNT II
### 8th Amendment Violations

45. *Jane Doe No. 1* incorporates by reference prior paragraphs.

46. The 8th Amendment of the U.S. Constitution provides, in pertinent part, that excessive bail may not be required, nor excessive fines be imposed nor cruel and unusual punishments be inflicted.

47. *CCJ's* decisions (a) to detain *Jane Doe No. 1*, while knowing her medical condition and knowing that she could be immediately transported to the local hospital facility, and (b) to take *Jane Doe No. 1* into their custody, creating a special relationship with her, violated *Jane Doe No. 1's* constitutionally protected 8th Amendment rights by exhibiting deliberate indifference to *Jane Doe No. 1's* serious medical needs as a result of *CCJ Staff's* failure to adequately protect and/or monitor *Jane Doe No. 1's* known and serious medical condition.

48. *CCJ* and *CCJ Staff's* detained *Jane Doe No. 1* for days with willful, systematic, and deliberate indifference to her basic needs. The surveillance video from *CCJ,* from *Jane Doe No. 1's* time there, will support her abhorrent lack of treatment or care by *CCJ Staff.* She sustained serious injuries due to *CCJ Staff's* deliberate indifference to her serious medical needs. This violated *Jane Doe No. 1's* constitutionally protected 8th Amendment right to be free from cruel and unusual punishment.

49. Despite having subjective, objective, and/or actual knowledge of *Jane Doe No. 1's* serious medical needs, *CCJ Staff* were deliberately indifferent to her serious medical needs and made the conscious decision to prevent her from being transported from *CCJ* to receive needed medical treatment. Instead, she continued to needlessly suffer. *CCJ Staff* repeatedly downplayed and disregarded the consequences of their actions and inaction, thereby violating *Jane Doe No. 1's* Constitutional right to be free from cruel and unusual punishment.

50.     As a direct and proximate result of *CCJ's* actions, *Jane Doe No. 1* suffered physical and emotional injury, loss of freedom, and other constitutionally protected rights.

**WHEREFORE,** Plaintiff, ***Jane Doe No. 1,*** requests that this court enter judgment against Defendants, *jointly and severally,* in an amount consistent with the damage sustained.

## PRAYER FOR RELIEF

Plaintiff, *Jane Doe No. 1*, respectfully requests that this Court enter judgment against Defendants jointly and severally, both individually and as agents of *Clinton County* in an amount consistent with the damages sustained, award *Jane Doe No. 1's* reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988, and award all other further relief to which *Jane Doe No. 1* may be entitled including exemplary and punitive damages if discovery so merits.

## DEMAND FOR TRIAL BY JURY

*Jane Doe No. 1* demands a trial by jury for all issues so triable herein.

Respectfully submitted,

**PERRONE LAW PLLC**

Dated: March 23, 2025         /s/*Jacob A. Perrone*_____
　　　　　　　　　　　　　　　Jacob A. Perrone (P71915)
　　　　　　　　　　　　　　　Attorney for Plaintiff
　　　　　　　　　　　　　　　3310 Kresge Ln.

East Lansing, MI 48823  
(517) 719-4657  
jacob.perrone@yahoo.com