## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DIVISION OF MICHIGAN
### *Southern Division*

**MICHEALA MICHELLE LUDWICK**,

|  |  |
|---|---|
| *Plaintiff*, | Case No.: 1:25-cv-00320 |
| vs. | Hon. **Jane M. Beckering** |

**CLINTON COUNTY et. al.,**
Defendants.

_____/

**DRAGON LAWYERS PC ©**
Jacob A. Perrone (P71915)
Attorneys for Plaintiff
325 East Grand River Ave., Suite 250
East Lansing, MI 48823
Phone: (517) 719-4657
jacob.perrone@yahoo.com

**CUMMINGS MCCLOREY DAVIS & ACHO**
Timothy S. Ferrand (P39583)
Attorney for Clinton County
19176 Hall Rd., Ste 205
Clinton Township, MI 48038
(586) 228-5600
tferrand@cmda-law.com

**CHAPMAN LAW GROUP**
Devlin Kyle Scarber (P64532)
Attorney for Defendant Thelen
1441 W Long Lake Rd., Ste 310
Troy, MI 48098
(248) 644-6324
dscarber@chapmanlawgroup.com

_____/

## PLAINTIFF MICHEALA LUDWICK'S MOTION FOR RELIEF FROM JUDGMENT

_____/

**NOW COMES** Plaintiff, ***Micheala Michelle Ludwick***, (hereinafter referred to as "*Ms. Ludwick*") by and through his or her attorneys, **DRAGON LAWYERS PC ©**, and provides this Motion for Relief from Judgment Pursuant to Fed. R. Civ. P. 60.

1.     Any service that was untimely was eventually cured and there were substantial efforts at making service and/or getting an acknowledgement in that *ACH* counsel *Devlin Scarbro*, had

notice at least as early as July 30, 2025, when Ms. Ludwick's counsel sent him and CCJ attorney's an email with Summons and Complaint. Otherwise, it is more than likely *ACH* had notice after April 11, 2025, when the *Lansing State Journal* ran a front page article or on April 29, 2025 when the *New York Times* published an article containing the allegations in this and a companion case. Further, the *Summons* and *Complaint* were delivered on August 11, 2025, *Restricted Delivery*, to *ACH Headquarters* in Franklin, Tennessee that went disregarded. Further, Plaintiff had previously disclosed an illness to this Court on another case indicating a short health issue, just to show the delay wasn't deliberate in any way. Given all the factors *ACH* should be reinstated.

2.      *Ms. Ludwick* provides proof that a process server dropped off the *Summons* and *Complaint* on November 6, 2025, along with a *Restricted Delivery* to the *Resident Agent* received on same day at the same address where personal service was effectuated. The delay didn't prejudice *ACH* as the claim is still well within the *Statute of Limitations* and *ACH* can't articulate how this could have negatively affected them when it is likely it would have been a strategic advantage because they had more notice. Hang back and claim defective service. The delay and technically untimely service didn't otherwise interfere with or prejudice the interest of efficient judicial administration. These factors strongly weigh strongly in favor of permitting technically untimely service as *ACH* is surely on notice.

3.      Given the disparity in resources between the parties, it is imperative that ACH be reinstated to the case and the Case Management Order remain in effect as ACH has no viable prejudice it can articulate.

4.      The system of supervising inmates health at the *Clinton County Jail* ("*CCJ*") is antiquated at best and there clearly wasn't any purposeful communication between *CCJ* deputies and *ACH* nurses or doctor who deliberately ignored and "brushed off" *Ms. Ludwick's* obvious need for

medical assistance as evidence by her poor medical state after just 3 days inside the *CCJ* under the supervision of *CCJ* deputies and *ACH* medical personnel.  The Motion to Dismiss denies the concise and substantive allegations in the *Complaint* as evidenced by the attached *Memorandum of Law* that is sufficient to support her constitutional claims based on the 8th *Amendment* to the *United States Constitution*. (the "*Constitution*")

5.      A jury could find that the *ACH* medical personnel acted with *Deliberate Indifference* because they "*failed to seek any basic medical assistance*" for *Ms. Ludwick*. This will be shown by the lack of documentation in relation to the serious and imminent nature of *Ms. Ludwick's* deteriorating health. *Ms. Ludwick* made initial showing of *Deliberate Indifference* by the county and/or *ACH* as to a constitutional violation. The allegations in the *Complaint,* specifically ¶*17,* demonstrate an ongoing pattern of similar violations of the *Constitution* caused by a failure to train or supervise *CCJ* and/or *ACH* medical personnel.

6.      ¶ 17 of the *Complaint* alleges *Deliberate Indifference* in similar cases involving *CCJ* and *ACH* involving genital infection, *MRSA* infections, absolute lack of medical screening, issues with detoxing inmates, and having issues regulating inmates blood sugar. *ACH* should have known about the prior incidents, and they demonstrate an ongoing pattern of similar constitutional violations caused by a failure to train or supervise *CCJ* and/or *ACH* employees and show *Ms. Ludwick* can succeed under a failure-to-train or failure-to-supervise theory of liability under *Monell*.

**WHEREFORE** *Plaintiff* respectfully requests that the Court reinstate *ACH* and schedule a Jury Trial.

Respectfully submitted by,

**DRAGON  LAWYERS  PC  ©**

Dated: January 20, 2025

By: /s/*Jacob A. Perrone*
Jacob A. Perrone (P71915)
Attorney for *Plaintiff*
325 East Grand River Ave., Suite 250
East Lansing, MI 48823
(517) 719-4657
jacob.perrone@yahoo.com

## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DIVISION OF MICHIGAN
### *Southern Division*

**MICHEALA MICHELLE LUDWICK**,

        *Plaintiff*,               Case No.: 1:25-cv-00320-JMB

vs.                      Hon. ***Jane M. Beckering***

**CLINTON COUNTY et. al.,**

        Defendants.

| | |
|---|---|
| **DRAGON  LAWYERS  PC** ©<br>Jacob A. Perrone (P71915)<br>Attorneys for Plaintiff<br>325 East Grand River Ave., Suite 250<br>East Lansing, MI 48823<br>Phone: (517) 719-4657<br>jacob.perrone@yahoo.com | **CUMMINGS MCCLOREY DAVIS & ACHO**<br>Timothy S. Ferrand (P39583)<br>Attorney for Clinton County, Chapko, Stout<br>19176 Hall Rd., Ste 205<br>Clinton Township, MI 48038<br>(586) 228-5600<br>tferrand@cmda-law.com<br><br>**CHAPMAN LAW GROUP**<br>Devlin Kyle Scarber (P64532)<br>Attorney for Defendant Thelen<br>1441 W Long Lake Rd., Ste 310<br>Troy, MI 48098<br>(248) 644-6324<br>dscarber@chapmanlawgroup.com |

/

## PLAINTIFF MICHEALA LUDWICK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF FROM JDUGMENT

**NOW COMES** *Plaintiff*, ***Micheala Michelle Ludwick*** , (hereinafter referred to as the "*Plaintiff and/or Ms. Ludwick*") by and through his or her attorneys, **DRAGON  LAWYERS  PC** ©, and provides this *Memorandum of Law* in Support of Motion for Relief from Judgment pursuant to Fed. R. Civ. P. 60.

# TABLE OF CONTENTS

I.    **STATEMENT OF THE CASE** ........................................................................ 10

    A.    FACTUAL BACKGROUND .......................................................... 11

    B.    LEGAL STANDARD ................................................................... 13

III.   **ARGUMENT** .............................................................................................. 15

    A.    *Ms. Ludwick* Plausibly States a Claim

        1.    *MS LUDWICK NOVEMBER 6, 2025, SERVICE IN LIEU OF THE SHOW CAUSE ALLOWED FOR SERVICE TO BE PROPERLY EFFECTUATED*………………………………………………………… ............... 15

        2.    *PLAINTIFF HAS PLAUSIBLY PLED SIGNIFICANT, RELIABLE, AND VERIFIABLE FACTS ESTABLISHING A MONELL CLAIM FOR DELIBERATE INDIFFERENCE.*……………………………………..…17

IV.   **CONCLUSION** ............................................................................................ 30

# TABLE OF AUTHORITIES

## STATUTES

*42 U.S.C § (1983)*...................................................................................................... 25, 26,

## FEDERAL CASES                                         Page

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ............................................ 14

*Andrews v. Wayne Cnty.*, 957 F.3d 714,725 (6th Cir. 2020) ......................................... 26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................14, 15

*Barberick v. Hilmer*, 727 F. App'x 160, 163–64 (6th Cir. 2018) .................................23

*Beck v. Hamblin County*, 969 F.3d at 601 (2020) ........................................................18, 22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................14,15

*Bell v. Hood*, 327 U.S. 678 (1946)................................................................................14

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ................................................ 18

*Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) ......................... 22

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997) .................................. 27

*Boshaw v. Midland Brewing Co., 32 F.4th 598, 603 (6th Cir. 2022)* ............................ 14

*Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021) ........................................ 17, 21, 23

*Burgess v.  Fischer*, 735 F.3d 462, 478 (6th Cir.  2013) .................................................. 25

*Campbell v. Riahi*, 109 F.4th 854, 860 (6th Cir. 2024) ................................................ 23

*cf. Trozzi v. Lake County*, 29 F.4th 745, 757-58 (6th Cir. 2022) ................................. 22

*Coleman v. City of Cincinnati, No. 21-5968, 2023 WL 5095804, at 4 (6th Cir. 2023)* ................. 26

*Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ............................................18

*Connick v. Thompson*, 563 U.S. 51, 70 (2011) ............................................................ 27

*Directv, Inc v. Treesh*, 487 F3d 471, 476 (6th Cir., 2007) ......................................... 15

*Doe v. Univ. of Ky.*, 111 F.4th 705, 715 (6th Cir. 2024). ........................................ 14

*Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ............... 15

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ……………………………………… 21

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ............................................. 18, 20, 21

*Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991) ......................... 16

*Gambrel v. Knox County*, 25 F.4th 391, 408–09 (6th Cir. 2022) ...........................27, 28

*Garner v. Memphis Police Dep't,* 8 F.3d 358, 365 (6th Cir. 1993) ...............................26

*Graham v. County of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) ......................... 25

*Greene v. Crawford County*, 22 F.4th 593, 608–09 (6th Cir. 2022) ..........................24

*Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000) ...............................15

*Grote v. Kenton County*, 85 F.4th 397, 407–08 (6th Cir. 2023) .............................. 22

*Habib v. GMC*, 15 F3d 72, 73 (6th Cir., 1994) ……………………………… 16

*Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) ............................ 26

*Helphenstine v. Lewis County,* 60 F.4th 305, 315–17 (6th Cir. 2023) .......................... 21, 25

*Hehrer v. ACH (Case No. 20-cv-1079 in the Western District of Michigan)*……………………..27

*Howell v. NaphCare, Inc.*, 67 F.4th 302, 316 (6th Cir. 2023) .................................... 24

*Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023) ............................ 14

*Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ........................................ 26

*Johnson v. Sootsman*, 79 F.4th 608, 615-16 (6th Cir. 2023) ................................. 21

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) ........................................... 21, 22

*Lawler v. Hardeman County*, 93 F.4th at 926 (6th Cir 2024) ............................... 20, 21

*Matsushita Elec.  Indus.  Co.  v.  Zenith Radio Corp., 475 U.S.  574, 586 (1986)).* .................... 14

*Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 691 (6th Cir. 2013) ................................ 26

*McGaw v. Sevier County*, 715 F. App'x 495, 497–99 (6th Cir. 2017) ......................................... 20

*Mercer v. Athens County*, 72 F.4th 152, 162–63 (6th Cir. 2023)   ............................................. 23

*Midland Brewing Co., 32 F.4th 598, 603 (6th Cir. 2022)* ……….…............................................. 11

*Milczak v. Gen. Motors, LLC, 102 F.4th 772, 783 (6th Cir.  2024)* ........................................... 14

*Moiser v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024) ..................................................................... 26

*Monell v. Department of Social Services, 436 U.S. at 694 (1978)*............................................ 25, 29

*Monroe v. Pape, 365 U.S.  167, 190 (1961) )*................................................................................ 25

*Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286–87 (6th Cir. 2020) ................................. 24

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ........................................................... 26

*Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008)……………….................................... 18

*Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021) ……………….......................................... 20

*Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380 (1993)….16

*Pineda v. Hamilton County*, 977 F.3d 483, 495 (6th Cir. 2020) ……………...…......................... 26

*Reilly v. Vadlamudi,* 680 F.3d 617, 626 (6th Cir. 2005).* ……………...................................... 18

*Rizzo v. Goode*, 423 U.S. 362, 377 (1976) ……………...........................................................18

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68–69 (2007) ........................................................ 23

*Scott v. Harris*, 550 U.S. 372, 380 (2007) ...................................................................................9

*Scheuer v. Rhodes,* 416 U. S. 232, 416 U. S. 248. P. 436 U. S. 701 (1974) .............................. 25

*Shadrick v. Hopkins County,* 805 F.3d 724, 738–39 (6th Cir. 2015) ......................................... 27

*Shaver v. Brimfield Township*, 628 F. App'x 378, 383 (6th Cir. 2015) ..................................... 23

*Smith v. County of Lenawee*, 505 F. App'x 526, 533–34 (6th Cir. 2012) ................................... 23

*Stojcevski v. Macomb County*, 827 F. App'x 515, 522 (6th Cir. 2020) ...................................... 23

*Tam Travel, Inc v. Delta Airlines, Inc*, 583 F3d 896, 903 (6th Cir., 2009 ...................................... 15

*Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615 (2020) .......................................................................... 11

*Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005) .......................................... 29

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ......................................................;.......................... 22

*Winkler v. Madison Cnty.*, 893 F.3d 877, 900 (6th Cir. 2018) ......................;.......................... 26, 29

*Williams v. Mehra*, 186 F.3rd 685, 691 (6th Cir. 1999) .......................................................... 18

## FEDERAL STATUTES

*U.S. Const. amends. XIV* ................................................................……………...20
*U.S. Const. amends. VIII,* ...........................................................……………...20

## FEDERAL RULES

Federal Rule of Civil Procedure 12(b)(1)................................................................. 14
Federal Rule of Civil Procedure 12(b)(6)................................................................. 15
Federal Rule of Civil Procedure 4 (m)..................................................................... 16
Federal Rule of Civil Procedure 8............................................................................ 15
Federal Rule Civil Procedure. 56(a).  ..................................................................... 14
Federal Rule Civil Procedure. 60…………………………………………………3

## TREATISES

*Restatement (Second) of Torts* § 500 (Comment g) ...................................................... 23
*W. Page Keeton et al., Prosser and Keeton on the Law of Torts* § 34, at 213 (5th ed. 1984) ........ 23

## <u>STATEMENT OF ISSUES PRESENTED</u>

SHOULD PLAINTIFF'S COMPLAINT AGAINST ACH BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(M)?

Defendant Answers:                              YES.
Plaintiff Answers:                              NO.


SHOULD PLAINTIFF'S COMPLAINT AGAINST ACH BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)?

Defendant Answers:                              YES.
Plaintiff Answers:                              NO.

## **FACTUAL BACKGOUND**

Plaintiff, **Micheala Michelle Ludwick**, (hereinafter referred to as "*Plaintiff*" or "*Ms. Ludwick*"), pled all elements of the claims in the *Complaint* against *Advanced Correctional Healthcare* ("*ACH*").  As explained in greater detail below, *Ms. Ludwick* has plausibly alleged a *Deliberate Indifference* claim against *ACH* as they were the only medical personnel.

On or about **March 22, 2024**, *Ms. Ludwick* was arrested for allegedly drinking while on bond and held at the *Clinton County Jail* in St. Johns, Michigan (the "*CCJ*") pending a March 28, 2024, *Bond Violation Hearing*. *Ms. Ludwick* started vomiting while at *CCJ* almost immediately upon being lodged and showed consistent, and objective signs of medical distress that *CCJ Staff (also referred to as "ACH Personnel")* were *Deliberately Indifferent* to *Ms. Ludwick's* heart stopping was directly attributable to *ACH's Deliberate Indifference* to her health, safety, and specific medical needs by failing to provide and therefore preventing her from getting the medical care that she clearly needed, as evidenced by the *Clinton County District Court* releasing her immediately to a hospital, where she flat-lined due to her deteriorating health until her defibrillator restarted her heart. She was out for a total of 5 to 10 seconds.

*Ms. Ludwick* filed her initial *Complaint* on **April 2, 2025**, **(ECF No. 1)** with a Motion for Leave to File Proceed under Pseudonym. ("*Pseudonym Motion*") **(ECF No. 2)** A *Summons* was issued on **April 11, 2025**. On **May 5, 2025**, the Court entered an *Order* denying the *Pseudonym Motion*. **(ECF No. 8)** On **May 27, 2025**, *Summons* was issued in the name of *Micheala Michelle Ludwick,* and a *Notice of True Name* was filed*.* **(ECF No. 10,11)** On **July 30, 2025**, *Ms. Ludwick's* undersigned counsel sent an email to *ACH* counsel *Devlin Scarbro* containing the complaints in both cases against *ACH* and requesting an acknowledgement of service and sending a *Preservation Letter* as shown by **Exhibit A** attached hereto and incorporated herein. This email was also sent to

attorneys for the *CCJ* so it is more than likely they would invariably contact *ACH*. *CCJ* has answered the *Complaint* in this case. This email would have been received 64 days after the *Summons* was issued.  This is a shorter period than from time of filing because *Ms. Ludwick* had to decide whether she wanted her name in the news affiliated with being in jail, just as was the decision in the *Essenberg (25-cv-368)* companion case.

On **August 11, 2025**, 76 days after issuance of the *Summons*, *Ms. Ludwick* attempted to perfect service by sending the *Summons* and *Complaint Restricted Delivery* to *ACH* corporate headquarters located at 720 Cool Springs Blvd., Franklin, Tennessee 37067. ("*ACH Headquarters*") The front desk at *ACH* signed received on **August 11, 2025**, that the *Complaint* was received by *ACH Headquarters* and the *Ludwick* case was served simultaneously with the *Ludwick* case. This is the same address listed as the address for all officers of *ACH* for the *State of Michigan* and *Illinois* corporation divisions.

On **September 3, 2025**, a *Summons Returned Executed* as to *ACH* was filed in the companion *Ludwick* case reflecting the service that occurred simultaneous to this case, as evidenced by **Exhibit B** attached hereto and incorporated herein. *Ms. Ludwick* didn't file a summons returned executed for *ACH* initially. On **September 15, 2025**, *Magistrate Sally J. Berens* issued an order requiring a new *Summons* for *ACH*, indicating the September 3, 2025, *Summons Returned Executed* was insufficient for service attached hereto as **Exhibit C** and incorporated herein by reference.

On **September 12, 2025**, *Dawn Thelen,* a former worker for *ACH* whose attorney is *Devlin Scarbro, ACH's* counsel, was served with both the *Summons* and *Complaint* for this case and the companion *Ludwick* case as evidenced by **Exhibit D** attached hereto and incorporated herein by reference.  On **August 12, 2025**, *Ms. Ludwick* previously served the wrong *Dawn Thelen,* in St. Johns as evidenced by **Exhibit E** attached hereto and incorporated herein by reference.

13

On **October 23, 2025**, the court issued an *Order to Show Cause* by November 13, 2025, re: service, **(ECF No. 13)** attached hereto as **Exhibit F** and incorporated herein by reference. On **November 1, 2025**, *Ms. Ludwick* attempted service on *ACH* officers *Angela Moriarty* and *Jessica Young* at *ACH Headquarters*, yet another copy of *Ms. Ludwick's Complaint* was received at *ACH Headquarters* as evidenced by **Exhibit G** attached hereto and incorporated herein by reference. On **November 6, 2025**, *Ms. Ludwick* served *ACH* by both *Personal Service* and by *Restricted Delivery* to *ACH's Registered Agent* as evidenced by **Exhibit H** attached hereto and incorporated herein by reference.

On **April 11, 2025**, this case was featured on a front-page lead story in the *Lansing State Journal.* On **April 29, 2025**, this case was featured nationally in the *New York Times*, and the story went viral and caused upwards of 20 media outlets to run a story about the case and underlying allegations. The articles are attached hereto as **Exhibit I** attached hereto and incorporated herein by reference.

There has also been some reference to *Dawn Thelen*, whom *Devlin Scarbro* represented in the companion *Ludwick* case. *Dawn Thelen* was eventually dismissed as she was added as a mistake because it appears Dawn was the name of the nurse that replaced *Dawn Thelen* for *ACH* at the *CCJ*. There are not fake people. There is an actual *Nurse Dawn* at *CCJ* that is an employee of *ACH* as evidenced by the attached **Exhibit J** incorporated herein by reference.

## LEGAL STANDARD

In resolving a facial attack to federal question jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must "assume [the Plaintiff's] allegations to be true and draw all reasonable inferences in his favor."  Moreover, "jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional," and are only warranted "where the alleged claim

under the constitution or federal statutes clearly appears to be immaterial and made solely for the

purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous."

*Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

### Federal Rules of Civil Procedure 60. Relief from a Judgment or Order
In pertinent part:

(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
    (1) mistake, inadvertence, surprise, **or excusable neglect;**
    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
    (4) the judgment is void;
    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
    (6) **any other reason that justifies relief.**

1)    **ARGUMENT:** PLAINTIFF SERVICE ON ACH IN LIEU OF THE SHOW CAUSE ALLOWED FOR SERVICE TO BE PROPERLY EFFECTUATED ON NOVEMBER 6, 2025.

Fed. R. Civ. P. R. 4(m) provides as follows:

**(m) Time Limit for Service.** If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows **good cause** for the failure, the court must extend the time for service for an appropriate period.

The determination of good cause is left to the sound discretion of the district court. *Friedman*

*v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991). "Good cause necessitates a demonstration

of why service was not made within the time constraints…" *Habib v. GMC*, 15 F3d 72, 73 (6th

Cir., 1994).

An attorney's inadvertent failure to file a proof of claim by the bar date can constitute

"excusable neglect" within the meaning of Rule 9006(b)(1). Pp. 387-397. *Pioneer Investment*

*Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993). *Pioneer* discussed the showing that a creditor should be required to make in order to be permitted to file a late proof of claim. In *Pioneer*, the *Supreme Court* identified the following factors as relevant to the determination of whether a party's failure to comply with a deadline is excusable: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395. The determination of what conduct constitutes excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer* at 395.

*Ms. Ludwick's* counsel's neglect was excusable because it was grounded in good faith as shown by the numerous attempts at procuring service and under all circumstances including the notice *ACH* likely received from the *CCJ*, the *Lansing State Journal* front page story, or viral *New York Times* story. The lack of any prejudice to *ACH* or to the interest of efficient judicial administration weigh strongly in favor of permitting the technically untimely service as *ACH* is surely on notice. Any service that was untimely was eventually cured and there were substantial efforts at service and/or getting an acknowledgement. On July 30, 2025, Ms. *Ludwick*'s counsel wrote an email directly to *ACH* counsel *Devlin Scarbro* so *ACH* would have had notice then. The *Summons* and *Complaint* were delivered *Restricted Delivery* with the *Summons* and *Complaint* on August 11, 2025, to *ACH Headquarters* in Franklin, TN and signed for by the front desk that went disregarded.

*ACH* has failed to indicate how any delay in this matter would prejudice its ability to defend the matter. On November 6, 2025, *Ms. Ludwick* provides proof that a process server dropped off the *Summons* and *Complaint*, and a *Restricted Delivery* was received on the same date by the *Resident*

*Agent* at the same address.

Further, the delay didn't prejudice *ACH* as the claim is still well within the *Statute of Limitations.* or to the interest of efficient judicial administration weigh strongly in favor of permitting the technically untimely service as *ACH* is surely on notice.

A dismissal without prejudice would only serve to delay this matter further. A dismissal with prejudice would be inappropriate due to the resource disparity between the parties and the significant constitutional interests at stake.

2)  **ARGUMENT:** *PLAINTIFF HAS PLAUSIBLY PLED SIGNIFICANT, RELIABLE, AND VERIFIABLE FACTS ESTABLISHING A MONELL CLAIM FOR DELIBERATE INDIFFERENCE.*

Summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In effect, a genuine dispute of fact is material only when "a reasonable jury could return a verdict for the nonmoving party." *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023) (quoting *Anderson v. Liberty Lobby*, 477 U.S.  242, 248 (1986)). For that reason, "we construe the evidence and draw all reasonable inferences in favor of [the non-moving party]" when determining whether such a dispute exists.  *Doe v. Univ. of Ky.*, 111 F.4th 705, 715 (6th Cir. 2024).

The nonmoving party must do more than introduce "some metaphysical doubt as to the material facts." *Milczak v. Gen. Motors, LLC,* 102 F.4th 772, 783 (6th Cir.  2024) (quoting *Matsushita Elec.  Indus.  Co.  v.  Zenith Radio Corp.,* 475 U.S.  574, 586 (1986)).   Conclusory allegations—by themselves—aren't enough.  *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 603 (6th Cir. 2022). The motion should be denied if the claim is plausible on its face, that is, if "the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

     *Facial Plausibility* exists when the complaint alleges facts that permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard does not require a Plaintiff to prove his or her case, but only that the allegations in a complaint plead "more than a sheer possibility that the defendant has acted unlawfully." *See Ashcroft v. Iqbal, 556 U.S. 662 (2009)*

     A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Fed. R. Civ. P. 8(a)(2*). Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) (stating Fed. R. Civ. P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). Instead, factual enhancement is required to "nudge [] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant" is responsible for the alleged conduct. *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556). While Plaintiffs are not required to make "detailed factual allegations[]" to survive a Fed. R. Civ. P. 12(b)(6) motion, the pleading requirements imposed by Fed. R. Civ. P. 8 "demand more than an unadorned, the-defendant-unlawfully-harmed- me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

     Courts "need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc v. Treesh*, 487 F3d 471, 476 (6th Cir., 2007) (citing *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Tam Travel, Inc v. Delta Airlines, Inc*, 583 F3d 896, 903 (6th Cir., 2009) (citing *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

To avoid dismissal of his *Deliberate Indifference* claims, *Plaintiff* must allege that she had a "sufficiently serious" medical need, and must also show that for each allegation, a particular Defendant was subjectively aware of that serious medical need and consciously disregarded it. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001); *Williams v. Mehra*, 186 F.3rd 685, 691 (6th Cir. 1999); *Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008).

The Plaintiff must also make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Plaintiff must state a plausible constitutional violation against each individual defendant – the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi,* 680 F.3d 617, 626 (6th Cir. 2005).

The *Complaint* contains particular, articulable, and specific facts supporting *Plaintiff's* claims of *Deliberate Indifference* as specifically identified below, especially since the claims against *ACH* are inaction, and an attempt to prove they didn't do something they should have. *Ms. Ludwick's* significant and severe injuries that will require lifelong observation evidence an entire lack of any care even though *Ms. Ludwick* showed a medical need through her repeated requests for assistance for her obviously debilitated medical state that was disregarded by *ACH* and *CCJ*. She was shooed away by the nurse and no one called the doctor who was contracted, instead disregarding obvious signs of distress, begging, vomiting, appearing generally ill, and not eating. All clear signs of *Xanax* Withdrawal, which can be extremely debilitating, deadly, and also has a significant and known risk for seizures of the type suffered by *Ms. Ludwick* after no one listened to her or saw the obvious signs

19

of extreme medical need.

## ***EXCERPTS COMPLAINT***

### *COMMON ALLEGATIONS*

12.     At all times relevant, Defendant, *Advanced Correctional Healthcare, Inc.* (hereinafter "*ACH*"), was and is an Illinois corporation, doing business in *Clinton County*, and contracted with *Clinton County* to provide medical services to inmates at the *CCJ* and is the entity responsible for the control and oversight of the operation and staffing of medical personnel and facilities at *CCJ*, including the organization, hiring, training, operation, supervision, retention and discipline of medical staff personnel at *CCJ* and the medical training of *Clinton County* correctional employees.

13.     At all  times  relevant,  each named individuals were employees/agents of *Clinton County, CCSO,* and/or the *CCJ*, engaging in the exercise of a governmental function and conduct within the course, scope and authority of his/her/their employment/agency with *Clinton County, CCSO,* and/or the *CCJ*.

14.     When the events alleged in this complaint occurred, *Defendant Deputies*, *ACH* and medical personnel were acting within the scope of their employment and under color of law.

15.     At all material times, *CCSO* employed both the *John Does*, any named deputies, *ACH*, and other medical personnel and is liable for their acts. The *CCSO* is also liable because of its policies, practices, and customs, which led to this complaint of violation.

16.     *Defendants* are all being sued in their individual and official capacities. Defendant *Clinton County* is being sued under a *Monell* theory of liability for enacting policies, whether written or unwritten, that demonstrated deliberate indifference of suspects in its custody, such as *Jane Doe No. 1*. Such deliberate indifference is directly responsible for *Jane Doe No. 1's* significant and continuing debilitating physical and mental injuries.  All defendants shall be collectively known as the "*Defendants*"

### *FACTUAL BACKGROUND*

19.     On June 7, 2023, at or about 8:30 a.m. at the *65A Judicial District Court* for the County of Clinton, State of Michigan, *Ms. Ludwick* was arguably wrongfully sentenced to thirty (30) days jail and transported to the *CCJ*.  *Ms. Ludwick* was held by the *CCSO* at the *CCJ* starting the morning of June 7, 2023, until she had a *Xanax* withdrawal induced seizure on June 10, 2023, when she was immediately and on an emergent basis transported to *University of Michigan Sparrow-Clinton Hospital,* ("*Sparrow*") because of *CCJ's* deliberate indifference to *Ms. Ludwick's* health and safety.

20.     *Xanex*, which is known to require monitoring for withdrawal symptoms and effectively providing some form of medication to counteract the loss of the anti-anxiety effects of

*Xanex*, which is a controlled substance and is well known for its withdrawal symptoms that can cause amongst other things seizures.

21.     *Ms. Ludwick* went to *Sparrow* after 3 days in the *CCJ* because she couldn't eat and was exhibiting clear and obvious signs of *Xanex* withdrawal and general ill health since she was processed in to *CCJ*. She disclosed her prescribed use of *Xanax* when she completed a medical screening upon being processed into *CCJ* on June 7, 2023, and no referral was made for her to see a physician.

22.     *Ms. Ludwick*  repeatedly begged for help for 3 days after arriving at *CCJ* because she knew that something was wrong but was **told that "*she would be ok*"**. *Ms. Ludwick* began exhibiting signs of *Xanax* withdrawal almost immediately after arriving at the *CCJ* and **vomited multiple times** prior to her seizure.  This was known or should have been known by *Defendant Deputies* and medical personnel including ~~*Nurse Thelen*~~. (*This shows her medical condition was evident and her requests for assistance were disregarded maliciously i.e. just buck up.*)

23.     *Ms. Ludwick* requested help from *Defendant Deputies* **4 to 5 times a day** including **repeated reports to *Sergeant Stout* and *Deputy Chapko*** to address her *Xanex* withdrawal.  ***Ms. Ludwick's* father called *CCSO* repeatedly** to request she be allowed to use her medications or be provided with another medication that could counteract the effects of the *Xanex* withdrawal.  Her father was told that if he kept calling, "*she would be put in a holding cell*", as punishment for her father calling. *CCJ* failed to provide the standard of care required of deputies in a situation where they are in charge of someone who is in custody.  (*This further shows that not only was Ms. Ludwick persistent but her father was also pestering CCJ with calls requesting assistance. In the face of all the obvious signs and notice CCJ and ACH instead disregarded any level of care.*)

24.      *Ms. Ludwick* saw *Nurse Thelen* very briefly and was told that "*a doctor wouldn't be there until nearly a week later on the following Wednesday June 14, 2025*." She was  also told she "*would have to wait until the doctor came the following Wednesday*." *Nurse Thelen* rushed her away. Upon information, knowledge, and belief there are a substantial number of other prior and current inmates who will testify that *Nurse Thelen* repeatedly has been willfully, and maliciously indifferent to the needs and rights of inmates. (*Being rushed away is indicative of consciously and maliciously disregarding an obvious medical need.*)

25.     *Defendant Deputies* clearly had the ability to observe *Ms. Ludwick's* condition, and they were aware of her previous prescription for *Xanax* yet failed to provide any measure of treatment to counteract the withdrawal symptoms as would be required by appropriate policies and procedures being implemented and/or customarily complied with. (*The jail has policies and procedures regarding withdrawal from other substances but fails to comply with those same policies when it comes to Xanax and other controlled substances deemed problematic for inmates. If you are going to take away someone's prescribed medication and not provide any replacement or alternative therapy there is a significant risk of seizure, other complications, and even death.*)

26.     On the morning of June 10, 2025, *Ms. Ludwick* had a *Zofran* anti-nausea medication dropped off for the *Xanex* withdrawals. She was brought into the medical unit and placed on a bench to take the *Zofran*. *Ms. Ludwick* had a seizure while sitting on the bench that resulted from the deprivation of not only medical attention but deprivation of her basic needs and therefore her rights. This was *Ms.*

*Ludwick* 1ˢᵗ seizure. (*Ms Ludwick received the Zofran from an outside source. Essentially having to smuggle in a Zofran to treat herself, but received it to late as it was precipitated by a massive seizure necessitating immediate hospitalization.*)

27.    This seizure was obviously caused by *Xanax* withdrawal and *Defendants'* deliberate indifference to *Ms. Ludwick's* needs. She was immediately taken to the hospital to stabilize her condition.  *CCJ* told the paramedics that *Ms. Ludwick* had a panic attack and that was why she was taken to the medical unit to attempt to avoid the implication of liability.

28.    Because of the delay in obtaining medical attention, *Ms. Ludwick's* quality of life has declined because of physical injuries, including the seizure and hitting her head on the concrete. Her mental health has suffered and the lasting and exacerbated mental and emotional damages are virtually immeasurable.

29.    *Defendant Deputies* were acting in a manner consistent with a general policy at *CCJ* that inmates aren't entitled to have basic necessities.  When *Ms. Ludwick* was incarcerated she was deprived of her right to medical treatment because of the strict customs, policies, and procedures employed by *CCJ* that do not account for inmates with certain health classifications.

42.    Despite *CCJ* and *ACH* policies and procedures, *Defendants* tolerated policies exhibiting a complete disregard amounting to deliberate indifference of inmates' health and/or sanitary and/or safety needs as illustrated by the facts as fully set forth above as well as the following: (*This cites the many prior incidents that establish the informal policy that establishes* ***Monell.***)

    a)    Upon information and belief, prior to *Ms. Ludwick's* incarceration, another inmate had overdosed on fentanyl while in the care and custody of *Defendants*.

    b)    Upon information and belief, despite multiple requests for help from *Defendants*, an inmate with *MRSA* did not receive medical attention until the infection on his face developed pus.

    c)    Upon information and belief, another inmate with a genital infection was not seen until the area had become swollen and exhibited signs of pus.

    d)    Upon information and belief, inmates, including *Ms. Ludwick*, were refused  the contracted for medical attention and care that *Defendants* were obligated to provide until inmates' medical conditions became so severe that *Defendants* were forced to send them to the hospital. (*Including the companion Essenberg Case 25-cv-368*)

    e)    Upon information and belief, inmates were often not given toilet paper and told to "fight for it." If they were not given toilet paper or could not acquire it, they were left to have a bowel movement and then take a shower to clean themselves.

f)   Upon information and belief, inmates were often not given mattresses upon arrival at *CCJ* and were also told to "*fight for it.*"

g)   Upon information and belief, upon arrival at *CCJ*, some inmates did not receive any medical screening and/or it was woefully limited.

h)   Upon information and belief, when inmates were detoxing at *CCJ*, they would not receive medical attention for days despite requesting assistance.

i)   Upon information and belief, inmates were administering medications to other inmates, including but not limited to, insulin, administering blood sugar tests, and administering other medications.

j)   While incarcerated at *CCJ*, a diabetic inmate had low blood sugar, communicated this with *Defendants* and was ignored. Finally, the inmate received glucose tablets, however, *Defendants* would not give her the correct dose, causing her blood sugar fall to alarming levels by the time she was released; and.

k)   Against the policies and procedures of *CCJ*, video surveillance shows Deputies dragging an inmate into a cell and covering up all the windows with a Velcro padding so that it was impossible to see and/or observe the inmate inside of the cell.

While the *Eighth Amendment's* ban on "cruel and unusual punishments" protects convicted prisoners, the *Fourteenth Amendment's* ban on "deprivations]" of "life" or "liberty" "without due process of law" protects pretrial detainees. *U.S. Const. amends. VIII, XIV*, § 1; see *Lawler v. Hardeman County*, 93 F.4th at 926 (6th Cir 2024). In this case *Ms. Ludwick* was a pretrial detainee (protected by the *Fourteenth Amendment*). *Clinton County* held her on charges that he operated her vehicle while under the influence and violated the terms of her bond. At one time, the distinction between pretrial detainees and convicted prisoners did not matter.

When both sets of inmates alleged that corrections officers had acted with *Deliberate Indifference* to their health, we required them to satisfy the same objective and subjective elements from *Farmer v. Brennan*, 511 U.S. 825 (1994). See *Lawler*, 93 F.4th at 926–27. Objectively, they had to establish that they had "serious medical needs." *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021)

(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Subjectively, they had to establish that a defendant knew of the substantial risk of serious harm that arose from their serious medical needs. See *Lawler*, 93 F.4th at 926–27. And they had to show that the defendant did not "respond reasonably to the risk" upon learning of it. *Farmer*, 511 U.S. at 844. *Helphenstine*, 60 F. 4th at 321 (The *Sixth Circuit* reversed summary judgment findings for jail employees who directly observed Helphenstine's condition yet did not seek medical attention, because a reasonable jury could conclude that their actions were deliberately indifferent to his serious medical needs.)

We have held that prisoners can establish that they have serious medical needs if "a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (citation omitted). And we have added that an inmate's condition meets this test when the inmate vomited and suffered from "'*sharp*' and '*severe'* stomach pains" over several days. *Id.* at 899; see *Grote v. Kenton County*, 85 F.4th 397, 407–08 (6th Cir. 2023). *Ms. Ludwick* reported similar symptoms leading to her avoidable health episode, including vomiting, nausea, and obvious pain. Further, the videos will show a lay person would easily be able to discern *Ms. Ludwick's* medical need in this case. *Ms. Ludwick's* deteriorating health was more than just noticeable visibly but *CCJ* was getting repeated phone calls from *Ms. Ludwick's* father that she had a medical need. The withdrawal symptoms were observable to the untrained eye.

In this case both the *Deputies* and the *ACH* medical personnel failed to act in the face of obvious imminent injury. There will be **no documentation** that *ACH* or *CCJ* can provide to substantiate any care.  The jail works on antiquated and outdated communication system between medical and deputies and any potential visit with a doctor staffed by *ACH* is highly discouraged by *ACH* because the doctor is contracted only 1 day a week, works for numerous other facilities and has

a booming private practice that interfere with his ability to provide attention that was surely lacking in this case.

This case wasn't about a malpractice standard. The blatant inaction in the face of certain danger of *ACH*, the actual *Nurse Dawn* currently contracted by *ACH* and all the *CCJ Deputies* inaction in the face of obvious need amounts to deliberate indifference and cruel and unusual punishment in violation of the *8ᵗʰ Amendment* to the *United States Constitution*. Their inaction also goes to show the complicity of the entire jail administration as the incidents that repeatedly pervade the *CCJ* almost always hinge on lack of any care or supervision. Further, you would expect changes to be made after the incidents that previously were the subject of litigation, but it doesn't appear that the *CCJ* has updated its systems in any way instead relying on message bins in the era of *Artificial Intelligence*. The *Deputies* are trained to be willfully and woefully indifferent to the needs of "inmates" at the *CCJ*.

Corrections officers respond to an inmate's medical concerns, so they typically act reasonably by referring an inmate's health concerns to medical personnel. See *Mercer v. Athens County*, 72 F.4th 152, 162–63 (6th Cir. 2023); *Shaver v. Brimfield Township*, 628 F. App'x 378, 383 (6th Cir. 2015); *Smith v. County of Lenawee*, 505 F. App'x 526, 533–34 (6th Cir. 2012). Yet deference to medical judgments has its limits. An officer might act recklessly, for example, if the officer does not seek medical help after an inmate suffers from "*new and alarming symptoms*" since last seeing a medical professional. *Stojcevski v. Macomb County*, 827 F. App'x 515, 522 (6th Cir. 2020) (quoting *Barberick v. Hilmer*, 727 F. App'x 160, 163–64 (6th Cir. 2018) (per curiam)); see, e.g., *Greene v. Crawford County*, 22 F.4th 593, 608–09 (6th Cir. 2022); *Smith*, 505 F. App'x at 535. Or an officer might act recklessly if the officer defers to an unethical healthcare worker that the officer knows mistreats inmates. See *Smith*, 505 F. App'x at 532. And, of course, an officer might act recklessly if the officer

fails to implement a medical professional's own instructions. See *Howell v. NaphCare, Inc.*, 67 F.4th 302, 316 (6th Cir. 2023).

The cases on which *Ms. Ludwick* relies were extremely similar to the treatment she didn't receive. In *Greene*, an inmate began to experience delirium tremens (confusion and hallucinations) from alcohol withdrawal. See *Greene*, 22 F.4th at 599–603. But officers did not seek medical care and instead had the inmate see a mental-health counselor. *Id.* at 602–03. The inmate died after going without any medical attention for some four days. *Id.* at 603–04. The Court held that a jury could find that the officers acted with *Deliberate Indifference* because they "failed to seek any basic medical assistance" for the inmate. *Id.* at 609; see also *Helphenstine*, 60 F.4th at 317–20. Just as the officers in *Greene* did not obtain any medical care for the inmate, the nurse and doctor staffed by *ACH* didn't provide any treatment although Ms. *Ludwick*'s medical condition was obviously severe and life threatening.

Like the inmate in *Greene*, the inmate in *Smith* died from delirium tremens caused by alcohol withdrawal. 505 F. App'x at 529. An officer watching the inmate called a doctor about her hallucinations. *Id*. at 530. The doctor told the officer that "she's on good medicine" and that isolation would "do her some good." *Id.* But she died the next morning. See *Id.* More importantly, no medical staff treated *Ms. Ludwick* like the inmate in *Smith*, even though her serious health condition was disclosed at the medical screening.

In this case both the *Deputies* and the *ACH* medical personnel failed to act in the face of obvious imminent injury. There will be **no documentation** that *ACH* or *CCJ* can provide to substantiate any care.  The jail works on antiquated and outdated communication system between medical and deputies and any potential visit with a doctor staffed by *ACH* is highly discouraged by *ACH* because the doctor is contracted only 1 day a week, works for numerous other facilities and has

a booming private practice that interfere with his ability to provide attention that was surely lacking in this case.

### *Monell Theory*

Local governments sued under § 1983 cannot be entitled to an absolute immunity, lest today's decision "be drained of meaning," *Scheuer v. Rhodes,* 416 U. S. 232, 416 U. S. 248. P. 436 U. S. 701 (1974) Under *Monell* and its progeny, a plaintiff may hold a municipality responsible for a "policy or custom" that inflicts a constitutional injury.  *Monell v. Department Social Services*, 436 U.S. at 694 (1978); see *Graham ex rel. Estate No.23-5214*, *Graham v. Cnty. Of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). To prove a *Monell* claim, plaintiffs must show that a government official violated their constitutional rights and that a municipal policy or custom is responsible for that violation. *Monell* at 694.

In creating the modern framework for § 1983 claims, the *Supreme Court* first interpreted the statute's reference to "person" as excluding municipalities from suit.  See *Monroe v. Pape*, 365 U.S.  167, 190 (1961).    But less than two decades later, the Court revisited the issue in *Monell*, "overruling . . . *Monroe* insofar as it holds that local governments are not 'persons' who may be defendants in § 1983 suits."  436 U.S.  at 700–01.   And yet the Court clarified that a local or municipal government cannot be sued under a theory of respondeat superior "for an injury inflicted solely by its employees or agents."  *Id.* at 694.  For that reason, the local government's own "policy or custom" must cause the deprivation of the plaintiff's constitutional or legal rights.  *Id.*

That holding gave rise to a new species of constitutional tort: the *Monell* claim.  Within these claims are "four recognized theories" of municipal liability: (1) an illegal or unconstitutional official policy, (2) ratification of illegal or unconstitutional actions by a policymaker, (3) illegal or unconstitutional actions stemming from a failure to train or supervise, and (4) "a custom of

tolerance or acquiescence of federal rights violations." *Helphenstine v. Lewis County*, 60 F.4th 305, 323 (6th Cir. 2023) (quoting *Burgess v.  Fischer*, 735 F.3d 462, 478 (6th Cir.  2013)).

Municipalities may nevertheless "be held liable under § 1983 in certain cases where no individual liability is shown." *Winkler v. Madison Cnty.*, 893 F.3d 877, 900 (6th Cir. 2018). As we have generally noted:

> Our Circuit has previously determined a defendant municipality's *Monell* liability by evaluating only a non-party's actions, suggesting that a party's liability is not required, as long as the court finds a constitutional violation occurred. *Andrews v. Wayne Cnty.*, 957 F.3d 714,725 (6thCir.2020); see also *Garner v. Memphis Police Dep't,* 8 F.3d 358, 365 (6th Cir. 1993) (rejecting City's argument that because the only defendant officer in the case had been dismissed by the district court, the city should also be dismissed).
>
> *Coleman v. City of Cincinnati,* No. 21-5968, 2023 WL 5095804, at 4 (6th Cir. 2023)

"Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory,' but rather 'for a policy or custom *of that private contractor.*'" *Winkler v. Madison Cty.*, 893 F.3d 877, 904 (6th Cir. 2018) (citing and quoting *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (emphasis in original). Under any approach, a plaintiff must plausibly allege that the policy is the "'moving force' behind the violation of the plaintiff's constitutional rights." *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 691 (6th Cir. 2013) (quoting *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)).

Municipal liability attaches when a "decisionmaker [who] possesses final authority to establish municipal policy with respect to the action" approves the unconstitutional conduct. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).   But a plaintiff can also demonstrate municipal ratification by showing a failure to investigate when there were "**multiple earlier inadequate investigations [that] concern comparable claims**." *Moiser v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024) (alteration in original) (quoting *Pineda v. Hamilton County*, 977 F.3d 483, 495 (6th Cir. 2020)).

*Ms. Ludwick* can point to the prior cases that have been litigated against *ACH* and *CCJ* including the *Hehrer* v. *ACH (Case No. 20-cv-1079 in the Western District of Michigan previously before Judge Rober J. Jonker)* and the other incidents of *Deliberate Indifference* in recent years that were pled in ₱17 of the *Complaint,* in addition to the companion *Essenberg* case (*Western District Case No*. 25-cv-368) whose lack of any care is extremely similar to this case.

*Hehrer* is significantly different and easily distinguishable from this case because *ACH* medical staff had multiple interactions with the inmate in *Hehrer*, whereas in this case *Ms. Ludwick* did not have the opportunity to see the doctor or talk to doctor before having the seizure. When Ms. Ludwick brought her complaints to Nurse Dawn, she was shooed away off and told she had to wait days for the doctor to visit, instead of any other follow up with *Ms. Ludwick* after the initial medical screening that was performed in a holding cell because the *CCJ* still uses holding tanks for infirmary because they don't have any other facility for an infirmary. The complete lack of medical supervision was the moving force behind *Ms. Ludwick's* deteriorated health that led to substantial injury.

These cases show a pattern of failing to investigate comparable claims. *Ms. Ludwick's* allegations contained in the *Complaint*, specifically ₱17 show there is a dispute of material fact as to the level of disregard and indifference *Ms. Ludwick* faced and the complete intentional lack of response from *CCJ* staff or *ACH* personnel thereafter that prevents summary judgment in this case under a ratification theory.

To establish a failure-to-supervise claim, a plaintiff must show both that (1) the municipality acted with "*Deliberate Indifference*" to the risk of constitutional violation and (2) the improper training or supervision "actually caused" the plaintiff's injury. *Gambrel v. Knox County*, 25 F.4th 391, 408–09 (6th Cir. 2022) (first quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997); and then quoting *Connick v. Thompson*, 563 U.S. 51, 70 (2011))

And to show *Deliberate Indifference*, the plaintiff must point to either a "pattern of similar constitutional violations by untrained employees" or else "a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick v. Hopkins County,* 805 F.3d 724, 738–39 (6th Cir. 2015) (internal quotation marks omitted); see also *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286–87 (6th Cir. 2020).

*Ms. Ludwick* made initial showing of *Deliberate Indifference* by the county and/or *ACH* as to a constitutional violation. The allegations in the *Complaint,* specifically ⁋*17,* which alleges *Deliberate Indifference* in similar cases involving *CCJ* and *ACH* involving genital infection, *MRSA* infections, absolute lack of medical screening, issues with detoxing inmates, and having issues regulating inmates blood sugar. *ACH* should have known about the prior incidents, and it demonstrates an ongoing pattern of similar constitutional violations caused by a failure to train or supervise *CCJ* and/or *ACH* employees.  In a similar vein, *Ms. Ludwick* can show throw the jail videos that the risk in this case was so obvious and likely to recur that the county's failure to train or supervise can be established by a single incident.

On March 28, 2025, after serving 6 days in the *CCJ*, *Ms. Ludwick* appeared at a *Bond Violation Hearing* and the *Clinton County District Court Judge* saw the imminency of *Ms. Ludwick's* quickly deteriorating medical condition and saw she needed immediate medical treatment and ordered she be released to a hospital immediately. The state *Ms. Ludwick* was in is indicative of the gravity of the deprivation of rights and *ACH* personnel's malice in intentionally disregarding her while it was apparent her likelihood of dying was high. At least that's what the Judge rightfully concluded. She has successfully pled a claim against *ACH* by including facts such as she was

brushed off when she attempted to get help. *CCJ* and *ACH* involvement in this case was appalling and despicable as will be shown by a video of her appearance and demeanor at the hearing.

Such single-incident claims of municipal liability, as we have clarified, remain "rare" precisely because the plaintiff bears such a high burden in showing that the need for specific training and supervision was "obvious." *Gambrel,* 25 F.4th at 410 (internal quotation marks omitted).  For that reason, the egregious nature of *ACH* personnel disregard for *Ms. Ludwick's* health and safety is glaring.  There is a genuine issue of material fact as to the adequacy of the *CCJ* and/or *ACH's* training and supervision and integrated systems.  And so, the allegations contained in the *Complaint*, specifically ℙ 17, show she can succeed under a failure-to-train or failure-to-supervise theory of liability under *Monell*.

To prove *ACH* had a custom of tolerating constitutional violations.  To make such a claim, a plaintiff must show "(1) a clear and persistent pattern of illegal activity, (2) which  the  [*ACH* and/or *CCJ*] knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the [*ACH* and/or *CCJ*] custom was the cause of the [constitutional deprivation]."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005).

*Ms. Ludwick* can show a pattern of relevant illegal activity and the similar incidents alleged in the *Complaint* show a persistent one.  See *Winkler v. Madison County*, 893 F.3d 877, 902 (6th Cir. 2018). Further, based on the lawsuits they have faced, and other incidents as alleged in ℙ 17 of the *Complaint*  alleging medical neglect in cases involving genital infection, *MRSA* infections, absolute lack of medical screening, issues with detoxing inmates, and having issues regulating inmates blood sugar show it is clear *ACH* should have known about the prior incidents. Also, the *Ludwick* case occurred before this, and her significant injuries should have made them aware of the illegal activity.

The recurrence of another medical event and eerie similarities between this case, *Ludwick*, and the numerous cases cited in *Complaint* satisfy the outrageous inaction of *ACH* showing they remained *Deliberately Indifferent,* even after lawsuits and inmates suffering significant injuries because of complete disregard for health and/or safety of inmates. *ACH* custom regarding not following up on inmates' medical needs and/or requests, especially in incidents where a medical need is disclosed in screening while processing into the jail caused the damages suffered by *Ms. Ludwick* by their failure to take any steps to observe and/or provide any form of treatment for her obvious medical issues, which is vastly similar to the other cases cited. Therefore, there is a genuine dispute of material fact that must proceed to a jury.

## **CONCLUSION**

For the foregoing reasons, *Plaintiff* respectfully requests that the reinstate *ACH* and schedule a Jury Trial.

Respectfully submitted by,

**DRAGON LAWYERS PC** ☺

Dated: January 20, 2026

By: /s/*Jacob A. Perrone*_____
Jacob A. Perrone (P71915)
Attorney for *Plaintiff*
325 East Grand River Ave., Suite 250
East Lansing, MI 48823
(517) 719-4657
jacob.perrone@yahoo.com

### **PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served on January 20, 2025, via e-filing herein at their respective addresses as disclosed on the pleadings.

I declare that the statements above are true to the
best of my knowledge, information and belief.

/s/ *Jacob A. Perrone*